IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| WILLIAM LEWIS, JR., | * |
| Plaintiff, | * |
| v. | * Civil Action No.: CBD-11-1423 |
| CAROLYN W. COLVIN,<br>Acting Commissioner,<br>Social Security Administration, | * |
| Defendant. | * |

\*\*\*\*\*\*

**MEMORANDUM OPINION**

William Lewis, Jr. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denies Plaintiff's claims for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 15) and Defendant's Motion for Summary Judgment ("Defendant's Motion") (ECF No. 18). The Court has reviewed the motions, related memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion, DENIES Defendant's Motion, and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion.

## I. Procedural Background

Plaintiff filed his applications for DIB and SSI on April 14, 2008, and alleged disability commencing March 21, 2006, on the basis of residuals of a brain tumor removal and depression. R. 114–20, 148, 181. The Commissioner denied Plaintiff's claims on first review on September 16, 2008 and upon reconsideration on January 28, 2009. R. 53–54, 60–69. Plaintiff appeared and testified at a hearing held on November 3, 2009 before an Administrative Law Judge ("ALJ"). R. 29–52. On December 15, 2009, the ALJ issued a written decision concluding that Plaintiff was not entitled to DIB or SSI payments. R. 11–24. On January 4, 2010, Plaintiff requested review of the ALJ's decision by the Appeals Council. R. 9–10. The Appeals Council denied Plaintiff's request on March 22, 2011, making the ALJ's decision final and appealable. R. 1–3

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2006). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v. Commissioner of Soc. Sec*., 440 F. App'x 163, 164 (4th Cir. 2011); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v.*

*Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345. The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456. If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Court shall find a person legally disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a sequential, five-step process that the Commissioner must follow to determine if a claimant meets this definition:

Step 1) Determine whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

Step 2) Determine whether the claimant has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3

Step 3) Determine whether the claimant has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If he does have such impairment, he is disabled. If he does not, proceed to step four.

Step 4) Determine whether the claimant retains the "residual functional capacity" to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

Step 5) Determine whether the claimant can perform other work, considering his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Defendant has the burden to prove that Plaintiff is not disabled at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## III. Analysis

In the ALJ's December 15, 2009 decision, he evaluated Plaintiff's claims using the five-step sequential process set forth in 20 C.F.R. § 404.1520 (2010). At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. R. 16. At the second step, the ALJ determined that Plaintiff has the following severe impairments: status post effects of the removal of a brain tumor (i.e., foot drop) and depression. R. 16. At the third step, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." R. 17. At the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that he is limited to:

> [S]itting for 1 hour at a time, with the option to stand for 10–15 minutes as needed; simple, routine, unskilled jobs; low concentration and low memory jobs; and little interaction with the public. In addition, claimant cannot perform work which requires climbing stairs, ladders, ropes, and scaffolds; walking or more than a little walking during work; exposure to hazardous machinery or

> unprotected heights; exposure to extremes of temperature of [sic] humidity; use of
> fine dexterity or manipulation. Finally, claimant's ability to push and/or pull with
> the right upper and right lower extremities is limited.

R. 19. The ALJ found that Plaintiff is unable to perform any of his past relevant work as a cook and security guard. R. 22. At the fifth step, the ALJ considered Plaintiff's RFC, age, education, and work experience to determine that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including type copy examiner, document preparer, microfilming, and surveillance system monitor. R. 22–23. As a result, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act," from the alleged onset date of March 21, 2006 through the date of the decision. R. 23.

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or remand the case for additional consideration and evaluation of Plaintiff's conditions. Plaintiff alleges the ALJ (1) improperly evaluated his RFC and (2) erroneously relied on flawed testimony by the Vocational Expert ("VE"). For the reasons set forth below, the ALJ's decision is affirmed in part and denied in part, and this case is remanded for further proceedings.

### A. ALJ Erroneously Assessed Plaintiff's RFC

Plaintiff argues that the ALJ erred at step four of the sequential analysis and inaccurately assessed Plaintiff's RFC, by failing to properly perform the required function-by-function assessment in three respects. Pl.'s Mem. 6–10. First, Plaintiff challenges the ALJ's sufficiency of explanation, claiming he did not support his assessment of Plaintiff's RFC with substantial evidence. Second, Plaintiff contends that the ALJ did not appropriately weigh the medical opinion evidence in determining Plaintiff's RFC. Third, Plaintiff takes particular issue with the ALJ's omittance of Section I of Dr. Shapiro's Mental Residual Functional Capacity ("MRFC") Assessment in his RFC finding. The ALJ erred regarding the first and second challenges.

### 1. ALJ Did Not Support the RFC Assessment with Substantial Evidence

Plaintiff contends that the ALJ failed to support his assessment of Plaintiff's RFC with substantial evidence, as the assessment (1) failed to provide a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and non-medical evidence; (2) failed to describe the maximum amount of each work-related activity Plaintiff could perform; and (3) failed to explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. Pl.'s Mem. 6. It is this last assertion, regarding material inconsistencies or ambiguities, where the ALJ neglected to provide sufficient explanation.

The claim that the ALJ "failed to provide a narrative discussion setting forth how the evidence supported each conclusion" is without merit. Pl.'s Mem. 6. In assessing Plaintiff's RFC, an ALJ performs a function-by-function assessment and must provide a narrative discussion "describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *3, 7 (July 2, 1996). The Administrative Procedure Act ("APA"), which applies to all federal administrative agencies, requires ALJs to state their "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A) (2012); *see also Brown ex rel. McCurdy v. Apfel*, 11 F. App'x 58, 59 (4th Cir. 2001) (stating that the Social Security Act and the APA require ALJs to "include an explanation of what evidence, or inferences drawn therefrom, were relied on in arriving at a decision"). However, "'an RFC assessment is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions.'" *Bowers v. Comm'r, Soc. Sec. Admin.*, No. SAG-11-1445, 2013 WL 150023, at *2 (D. Md. Jan. 11, 2013).

With the exception of the actual weight assigned to each opinion, the ALJ did include sufficient narrative discussion of the medical and non-medical evidence relied on in reaching his RFC assessment. The ALJ discussed Plaintiff's testimony, routine activities, medical treatment, physical and mental consultative examinations ("CEs"), and state agency opinions. R. 19–22. The ALJ also noted how the evidence supported his conclusion by citing to specific facts and exhibits in the record. R. 21–22. The reports suggest Plaintiff retains the RFC to perform sedentary work, with limitations. R. 19.

Plaintiff's claim that the ALJ did not describe her maximum remaining ability to perform sustained work is also meritless. Pl.'s Mem. 6. "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. The purpose of the ALJ's RFC assessment and his narrative description is to describe the most a claimant can still do despite physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012). Thus, when the ALJ determines Plaintiff's RFC he is doing so in terms of her maximum remaining ability to perform sustained work. *See id.* at *2 ("RFC is the individual's maximum remaining ability to do sustained work activities . . .").

Plaintiff correctly asserts that the ALJ "failed to explain how any material inconsistencies or ambiguities . . . were considered and resolved." Pl.'s Mem. 6. The Social Security Rulings require ALJs to consider and address medical source opinions in their RFC assessment and to explain why any opinion conflicting with their RFC assessment was not adopted. SSR 96-8p, 1996 WL 374184, at *7. The ALJ is obligated to both identify specific evidence from the medical opinions that he found inconsistent with the medical evidence as a whole, and also to

7

explain "the reasons for his findings, including the reason for rejecting relevant evidence in support of the claim." *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980) (citing *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)). Although the ALJ properly noted that material inconsistencies in the evidence existed, he did not sufficiently explain how he came to that conclusion or how he resolved the inconsistencies. For example, the ALJ states that Dr. Alkaitis's opinion "is not entirely consistent with the medical evidence as a whole," but does not specify what that evidence is. R. 21. The ALJ also states that Dr. Peck's opinion "is inconsistent with . . . the medical evidence as a whole," yet fails to identify where the inconsistency occurs. R. 21.

On the whole, the ALJ failed to provide sufficient explanation to support his RFC findings, and the Court "simply cannot tell whether [his] decision is based on substantial evidence or not." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986) (articulating the result of insufficient explanation for a reviewing court).

### 2. ALJ Did Not Properly Indicate the Weight Applied to Medical Opinion Evidence in Determining Plaintiff's RFC

Plaintiff argues that the ALJ did not properly evaluate the medical opinions of Drs. Alkaitis, Tanman, Peck, Totoonchie, Shapiro, and Moore. Pl.'s Mem. 6–9. Specifically, Plaintiff contends that the ALJ merely stated he had accorded "appropriate weight" to each opinion, without any additional explanation about what that "appropriate weight" might be. Pl.'s Mem. 6–7. Such action would indicate that the ALJ had (1) failed to sufficiently explain how he resolved inconsistencies in the medical opinion evidence; (2) failed to sufficiently explain why any individual opinion was not adopted; and (3) failed to sufficiently consider the six factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c) regarding the amount of weight to give a medical opinion. Pl.'s Mem. 6–9.

The Fourth Circuit requires "explicit indications as to the weight given to all the evidence." *Sanderlin v. Barnhart*, 119 F. App'x 527, 528 (4th Cir. 2005) (citing *Gordon v. Schweiker,* 725 F.2d 231, 235 (4th Cir.1984)). The duty of explanation in weighing medical opinion evidence is especially important where there are conflicting physician opinions, thus the ALJ "must indicate explicitly that such evidence has been weighed and its weight." *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977); *see also Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (remanding where opinion contained no indication of why ALJ credited one doctor's opinion over another).

To determine the weight assigned to medical opinions, the ALJ is to consider six factors: (1) the examining relationship between the source and the claimant; (2) the length, nature, and extent of the treatment relationship between the source and the claimant; (3) the supportability of the source's opinions; (4) the consistency of the source's opinions with the record as a whole; (5) any specialized expertise of the source; and (6) other factors which the claimant may bring to the Commissioner's attention. 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012). For medical sources who have not examined or treated the claimant, the adjudicator must assign weight depending on the degree to which they provide supporting explanations for their opinions. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

The difficulty with the ALJ's decision is that he did not explain the weight he attributed to the medical opinion evidence, stating simply that each opinion had been "given appropriate weight" without explaining what that appropriate weight might be. R. 21–22. For example, the ALJ reported that Dr. Alkaitis's "opinion is not entirely consistent with the medical evidence as a whole and fails to account for claimant's mental impairment," and that "[g]iven these facts, [his] opinion is given appropriate weight." R. 21. The opinion of consulting physician Dr. Tanman

9

"appears to rely heavily on claimant's subjective complaints and [is] not supported by objective evidence," yet the ALJ simply states that it too received "appropriate weight." R. 21. The appropriate weight of Dr. Tanman is indistinguishable from that given to the opinions of non-examining physicians, Drs. Totoonchie and Moore, despite their "consistency with the medical evidence as a whole and with each other." R. 21. Dr. Peck's evaluation "is inconsistent with [his] own evaluation and the medical evidence as a whole, but is also "given appropriate weight." R. 21. Even the opinion of non-examining psychologist Dr. Shapiro, which "is fairly consistent with the evidence as a whole and with claimant's reported activities," is given only "appropriate weight." The ALJ does not assign any opinion controlling weight; he does not indicate which opinions he adopted, let alone explain why; and he does not explain how he resolved the inconsistencies that he spotlights.

Defendant argues that the ALJ "indicated his acceptance or rejection of the opinions" in his explanations. Def.'s Mem. 12. Fourth Circuit jurisprudence, however, is clear that the ALJ must explicitly state the weight he accords each opinion. *Sanderlin*, 119 F. App'x at 528. For instance, Dr. Tanman reported Plaintiff had significant difficulty sitting, standing, walking, balancing, lifting, carrying, and handling objects. R. 57–63. If the ALJ were to give greater weight to Dr. Tanman's medical opinion, his determination that Plaintiff retains an RFC to perform sedentary work would not be viable, even with the aforementioned limitations. *See* R. 19. It is not enough to merely indicate that an opinion has been weighed and leave the reviewing court to interpret what that weight might be. This lack of explanation leaves the Court without an adequate understanding of how the ALJ reached certain essential decisions.

### 3. ALJ's RFC finding Properly Accounted for Section III in Dr. Shapiro's MRFC Assessment

Plaintiff argues that, without explanation and despite finding Dr. Shapiro's opinions consistent with record, the ALJ failed to include the moderate limitations from Section I of Dr. Shapiro's MRFC Assessment and instead concentrated on Section III. Pl.'s Mem. 9–10. However, "the relevant portion of the state examiners' opinions is not Section I, which sets forth a series of 'check the box' rankings, but Section III, which provides a detailed narrative functional capacity assessment." *Abbott v. Comm'r, Soc. Sec. Admin.*, CIV. SAG-11-0862, 2013 WL 256745, at *2 (D. Md. Jan. 18, 2013); *see also Butler v. Colvin*, CIV. JKS 12-2902, 2013 WL 6145540, at *4 (D. Md. Nov. 19, 2013) (stating the ALJ "is not bound by the 'check the box' rankings, but rather may focus on the narrative report of the examiner"). According to the *Program Operations Manual System* ("POMS") instruction regarding the MRFC Assessment:

> Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Section III . . . is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded.

POMS §§ DI 24510.060(B)(2)(a), (4)(a) (Oct. 14, 2010). Section I does not include enough detail to inform the ALJ of the doctor's precise assessment regarding functional abilities, thus the ALJ does not need to address each limitation in Section I. *White v. Comm'r, Soc. Sec. Admin.*, CIV. SAG-11-3769, 2013 WL 105202, at *1 (D. Md. Jan. 7, 2013); *see also Andrews v. Astrue*, Civil No. SKG–09–3061, slip op. at *39 (D. Md. Oct. 25, 2011) (noting that "even if the ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFC, he was not required to do so").

Although "administrative verbosity" is not required, ALJs must conduct analysis and explanation that allows a reviewing Court to understand what conclusions they reached and why

11

they reached them. *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999). Much of the ALJ's RFC assessment was devoted to summary and not enough to analysis. The ALJ seems to base his decision principally on the opinions of three out of six doctors, all of which are subjective reports. It would be an "abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational" to affirm an ALJ's opinion that does not explicitly indicate the weight given to the medical evidence and what conclusions are drawn therefrom. *Gordon*, 725 F.2d at 236 (internal quotation marks omitted). Therefore, the Court will remand this case for a more adequate analysis and explanation.

### B. ALJ Properly Relied on VE Testimony

Plaintiff argues that the ALJ erred at step five of the sequential analysis by relying on the VE's testimony, which he contends was based on questions that were either flawed or limited in scope. According to Plaintiff, the VE's testimony both conflicts with the *Dictionary of Occupational Titles* ("DOT") and fails to account for all Plaintiff's limitations, leading the VE to identify occupations outside Plaintiff's range of capabilities. Pl.'s Mem. 10–12. If the hypothetical is flawed, so too is the ALJ's decision based on that hypothetical.

#### 1. ALJ Properly Questioned VE Regarding Testimony that Conflicted with the DOT

In response to the ALJ's hypothetical, Plaintiff argues that the VE identified three occupations which are outside the range of work Plaintiff is capable of performing. Pl.'s Mem. 10–11. Plaintiff's contention is based on conflicting aspects of each occupation's DOT description and requirements. Pl.'s Mem. 10–11. The DOT classification information is the result of extensive national study and is generalized by nature. SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000). The DOT lists "maximum requirements of occupations as generally performed," not all the requirements of a job performed in particular settings. *Id*. Therefore, the

ALJ may rely on VE testimony "to provide more specific information about jobs or occupations than the DOT." *Id*. at *3.

Occupational evidence provided by a VE should, however, be consistent with occupational information supplied by the DOT. *See id*. at *2. When there is a conflict, the Social Security Rulings require an ALJ to "elicit a reasonable explanation for the conflict" before relying on VE testimony to support a decision. *Id.* The ALJ is not required to rely on or cite to the DOT classifications, so long as he asks the VE follow-up questions regarding any such inconsistency. *See Smith v. Astrue*, No. 8:10-2624-CMC-JDA, 2012 WL 786853, at *3 (D.S.C. Mar. 9, 2012); *Ratliff v. Astrue*, No. 1:09CV00020, 2009 WL 5033926, at *4 (W.D. Va. Dec. 21, 2009). The ALJ then determines whether the VE's explanation is reasonable and if it provides a basis for relying on the VE testimony instead of the DOT information. *See* SSR 00-4P, 2000 WL 1898704, at *2.

The ALJ's question to the VE described a hypothetical individual limited to occupations that would require no more than "[l]ow concentration" and "low memory," and "would not require fine dexterity or manipulation." R. 48–49. The VE identified three occupations—type copy examiner, document preparer, and surveillance system monitor—she estimated Plaintiff would be capable of performing and that existed in a significant number in the national economy. R. 49. The VE's evaluation may conflict with DOT definitions, but the Court need not address the merits of Plaintiff's arguments because the ALJ properly questioned the VE regarding the consistency of her testimony with the DOT. R. 50. The ALJ is not required to rely on the DOT classifications, especially where the VE is providing information "based upon [her] experience as a vocational counselor in placing people with similar disabilities in these positions." R. 50.

## 2. Hypothetical Question ALJ Posed to VE Was Proper, Even Though It Did Not List All Plaintiff's Limitations

Plaintiff challenges the ALJ's conclusion that he could perform work existing in the national economy by arguing that the hypothetical question the ALJ posed to the VE was flawed. Plaintiff argues the ALJ failed to include, without explanation, all of Plaintiff's limitations in his hypothetical question, causing the VE to respond with three occupations that are outside the range of work Plaintiff is capable of performing. Pl.'s Mem. 12–13.

The Commissioner employs VEs to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)–(c), 416.960(b)–(c) (2011). "In order for a [VE]'s opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted). The ALJ is afforded substantial leeway in the formulation of hypothetical questions. *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000).

When formulating the hypothetical question, the ALJ identifies the "physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); *see also Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003). The hypothetical question need not reference each of the claimant's impairments or diagnoses by name so long as it adequately reflects the limitations caused by those impairments. *Brown v. Astrue*, No. 10-1238, 2013 WL 937549, at *6 (D. Md. Mar. 8, 2013); *see also Chambers v.*

*Astrue*, No. 08-806, 2012 WL 4511051, at *2 (M.D.N.C. Sept. 28, 2012) ("'The hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments.'") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir.2006)); *Harris v. Barnhart*, No. 05-65, 2006 WL 1442792, at *11 (W.D. Va. May 25, 2006) (stating that the hypothetical question "need not use specific diagnostic terms") (internal quotations omitted); *Osgar v. Barnhart*, No. 02-2552-18B, 2004 WL 3751471, at *4 (D.S.C. Mar. 29, 2004), *aff'd*, 117 F. App'x 896 (4th Cir. 2005). It is the ALJ's role to translate the claimant's medical impairments into functional limitations from which the VE can determine whether work is available. *See Smith v. Sullivan*, 733 F. Supp. 450, 452 (D.D.C. 1990) ("[A]s a practical matter, a recitation of the claimant's various physical impairments is not going to be nearly as useful to the VE as the ALJ's specific finding of what are the claimant's actual disabling limitations arising from the physical impairments.").

The missing limitations that concern Plaintiff are Dr. Peck's CE report and Section I of Dr. Shapiro's MRFC Assessment. Pl.'s Mem. 12–13. The ALJ's question and the manner in which he posed the question to the VE, was proper. The Court will not remand merely because the hypothetical question did not specifically list each of Plaintiff's impairments and limitations. The ALJ appropriately provided a detailed hypothetical question based on his assessment of Plaintiff's RFC.

## IV. Conclusion

Based on the foregoing, the Court DENIES Plaintiff's Motion and DENIES Defendant's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion.

December 23, 2013

/s/
Charles B. Day
United States Magistrate Judge

CBD/slr